UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE ESTATE OF TERRY GEE JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:06-cv-00094-TWP-TAB |
| | ) |
| BLOOMINGTON HOSPITAL, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PENDING MOTIONS**

**I.    Introduction**

This cause is set for trial on April 2, 2012. In preparation for trial, the parties have filed numerous motions, some of which the Court addresses below.

**II.    Discussion**

    **A.    Defendants Edwards' and Johnson's motion to preclude**

Defendants Edwards and Johnson seek to preclude testimony of Plaintiff's expert witnesses.[1] [Docket No. 290.] Plaintiff responds by asserting that Judge Lawrence already ruled on this issue in a March 31, 2009, order when he held "that any legal conclusion or unsupported opinion should be stricken . . . ." [Docket No. 207 at 3–4.] However, as noted by Defendants, Judge Lawrence's decision was a limited evidentiary ruling made for the purpose of summary judgment and did not specifically state which opinions were legal conclusions or unsupported.

---

[1]Defendants' motion was originally filed as an objection, but the Court converted the objection to a motion to preclude. [Docket No. 298.]

1

[Docket No. 310 at 3.] Now that the parties are at the eve of trial, the Court will further address Plaintiff's expert testimony consistent with Judge Lawrence's decision.

*1. Legal conclusions*

Plaintiff's experts seek to testify that Defendants acted with deliberate indifference, which Defendants assert is an inadmissible legal conclusion. [Docket No. 290 at 1–4.] It is well settled that legal conclusions are inadmissible testimony. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); *West By & Through Norris v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997). In contrast, Federal Rule of Evidence 704(a) permits expert "testimony in the form of an opinion or inference otherwise admissible" even if it "embraces an ultimate issue to be decided by the trier of fact." The line between legal conclusions and an ultimate issue to be decided by the trier of fact is not always bright. *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997); *United States v. Sinclair*, 74 F.3d 753, 757 n.1 (7th Cir. 1996); *Hanson v. Waller*, 888 F.2d 806, 811–12 (11th Cir. 1989).

In *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994), the Sixth Circuit addressed whether expert testimony opining that a defendant acted with deliberate indifference was a legal conclusion or an ultimate issue to be decided by the trier of fact. The Sixth Circuit held that the expert should not have been permitted to testify that the defendant acted with deliberate indifference and should not have been permitted to define deliberate indifference. *Id.* The Sixth Circuit reasoned that:

> Although an expert's opinion may 'embrace[] an ultimate issue to be decided by the trier of fact[,]' Fed. R. Evid. 704(a), the issue embraced must be a factual one. The expert can testify, if a proper foundation is laid, that the discipline in the Detroit Police Department was lax. He also could testify regarding what he believed to be the consequences of lax discipline. He may not testify, however, that the lax discipline policies of the Detroit Police Department indicated that the City was deliberately indifferent to the welfare of its citizens.

2

> It would have been easy enough for the drafters of the Federal Rules of Evidence to have said that a properly qualified expert may opine on the ultimate question of liability. They did not do so. When the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue.

*Id.*

Numerous other cases have reached the same conclusion. *Burkhart*, 112 F.3d at 1212–13 ("[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied."); *Quagliarello v. Dewees*, 802 F. Supp. 2d 620, 624 (E.D. Pa. 2011) ("[T]he Court will grant Defendants' motion to preclude Signorelli's opinions as to ultimate legal conclusions, including whether Officer Dewees used 'unreasonable' force, whether Dewees had 'probable cause,' whether the treatment of Plaintiff was 'unlawful,' and whether the City showed 'indifference.'"); *Proper v. Crawford Cnty. Corr. Facility*, No. 06-279, 2010 WL 3829640, at *11 n.12 (W.D. Pa. Sept. 24, 2010) ("Whether Defendants' actions constituted deliberate indifference is a legal conclusion for the trier of fact to determine . . . ."); *Sommerfield v. City of Chi.*, 254 F.R.D. 317, 334 (N.D. Ill. 2008) (an expert witness may not testify that defendant was deliberately indifferent); *Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1097 (N.D. Ill. 2007) (same). In fact, in another § 1983 case, Plaintiff's expert was prohibited from testifying that the defendant acted with deliberate indifference. *Rasmussen v. Skagit Cnty.*, 448 F. Supp. 2d 1203, 1211 n.5 (W.D. Wash. 2006). Accordingly, Plaintiff's experts are not permitted to testify that Defendants acted with deliberate indifference.

Defendants also contend that Plaintiff's experts seek to testify to other legal conclusions such as Defendants' mental state and legal duties. [Docket No. 290 at 16, 18–19.] Expert testimony addressing Defendants' mental state and legal duties is permissible so long as the experts do not use legal terminology and make legal conclusions about Defendants' mental state or legal duties. For example, Plaintiff's experts seek to testify that Defendants acted with "wanton disregard or perhaps outright malice," that the actions were "reckless," and "negligent to borderline criminal." [Docket No. 290 at 9, 18–19.] These are all legal conclusions. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'"); *Vance v. Peters*, 97 F.3d 987, 991–92 (7th Cir. 1996) (explaining that the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994), redefined deliberate indifference, casting aside the objective test of negligence and adopting the standard of subjective recklessness). The wide variety and inaccurate use of many of the legal terms used by Plaintiff's experts demonstrates the reason experts are not permitted to testify on legal issues on which the judge will instruct the jury. *See also Berry*, 25 F.3d at 1353 (illustrating the problems associated with an expert witness defining and using legal terminology). Additionally, testifying that Defendants had a legal duty to treat Gee [Docket No. 290 at 16, 19] is also an impermissible legal conclusion. *See Vance*, 97 F.3d at 991–92 ("The [Eighth] [A]mendment imposes upon prison officials the duty to 'provide humane conditions of confinement' . . . including the obligation to provide medical care to those whom it has incarcerated.").

In summary, Plaintiff's experts "must stop short of embracing the 'legal terminology' which frames the ultimate legal conclusion which the jury must reach in the case." *Alvarado v.*

4

*Oakland Cnty.*, No. 2:09-cv-14312, 2011 WL 3566693, at *7 (E.D. Mich. Aug. 15, 2011) (citing *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)). Defendants' motion to preclude is therefore granted to the extent that Plaintiff's experts seek to testify that the Defendants acted with deliberate indifference or offer similar legal conclusions.

    2.    *Unsupported conclusions*

Defendants also contend that Plaintiff's experts should be precluded from testifying because their opinions are unsupported. [Docket No. 290 at 6–11.] The Court has reviewed the briefs and expert reports, and concludes that the majority of Plaintiff's proposed expert testimony complies with Federal Rule of Civil Procedure 26 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Experts Gerald Shiener, Joe Goldenson, Valerie Tennessen, and Scott Jacobs list the documents relied upon, discuss the pertinent facts that their conclusions are based upon, and set forth their reasoning and conclusions.[2] *See Zamecnik v. Indian Prairie Sch. Dist. No. 204*, 636 F.3d 874, 881 (7th Cir. 2011) (explaining that the inferential process must be apparent to the Court). For example, these experts discuss Gee's deteriorating medical condition, including a fever, inability to stand, skin tone, consciousness, confusion, blood sugar levels, and lack of food and water consumption before drawing their conclusions. [Docket No. 290, Exs. 2–7.] The medical conclusions reached by these experts

---

[2]Defendants claim that Plaintiff's experts' reports are also insufficient because they do not identify certain Defendants. [Docket No. 290 at 6–8, 11, 20.] The Court disagrees. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010) ("The purpose of these [expert] reports is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion . . . so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary."); *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009) (explaining that a party may "put a case together with testimony on one point from one expert, testimony on a second point from a second expert, etc., and evidence from non-experts.").

also fall within the purview of the experts' expertise since they are all trained and experienced doctors or medical professionals. Nothing before the Court suggests that the reasoning and methodology employed by these experts is scientifically invalid or that it will not assist the trier of fact. If Defendants believe that the experts' methodologies and conclusions are not credible, then "[v]igorous cross examination, presentation of contrary evidence and careful jury instructions . . . are the traditional and appropriate means of attacking shaky but admissible evidence." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 946 (N.D. Ill. 2006) (citing *Daubert*, 509 U.S. at 596).

On the other hand, the reports by Werner Spitz and William Katsaris are problematic. Spitz's two-page report lacks any meaningful detail. Spitz asserts that "[i]t is obvious . . . that the treatment given Terry Gee at the jail was inadequate and lacking direction, along with failure to follow the jail's own written policies and procedures, ultimately resulting in Terry Gee's premature demise." [Docket No. 209, Ex. 1.] Spitz does not identify or discuss any specific policy or procedure, and asserting that Gee was given inadequate treatment lacking in direction is too vague to provide guidance to the opposing party. *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) ("Expert reports must not be sketchy, vague, or preliminary in nature."). Moreover, when an individual suffers from an obvious injury or medical condition, as Spitz contends, expert testimony is unnecessary and inadmissible.[3] *E.E.O.C. v. AutoZone, Inc.*, 30 F.3d 635, 644 (7th Cir. 2010); *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001). Defendants' motion to preclude experts is therefore granted

---

[3]Defendants also identify other aspects of Plaintiff's experts' reports that claim certain medical conditions were obvious. [Docket No. 290 at 17, 19.] Like Spitz, Plaintiff's other experts are not permitted to testify about the obvious.

to the extent that Spitz is precluded from testifying.

With respect to Katsaris, he is expected to testify that certain policies and procedures were disregarded by Defendants. While Katsaris' declaration [Docket No. 209, Ex. 9] and preliminary affidavit [Docket No. 290, Ex. 8] fail to identify the policies and procedures that Defendants allegedly failed to follow, his deposition sufficiently fleshes out and identifies the bases for his conclusions. [Docket No. 290, Ex. 10.] Defendants, however, take issue with Katsaris' deposition because it was taken in June 2008, almost a year after the initial expert disclosures. [Docket No. 290 at 12–13 (citing *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008)).]

In *Ciomber*, the Seventh Circuit explained that a party must "provide notice to opposing counsel—before the deposition—as to what the expert witness will testify." *Ciomber*, 527 F.3d at 642. However, *Ciomber* is limited to cases where the expert later deviates "from the established scope of his expected opinion." *Metavante Corp. v. Emigrant Savs. Bank*, 619 F.3d 748, 762 (7th Cir. 2010); *see also Amari v. C.R. England, Inc.*, No. 1:07-cv-1616-WTL-TAB, 2010 WL 2943686, at *3 (S.D. Ind. July 21, 2010) ("Dr. Margolis's second report makes a 180-degree turn from his original report. Therefore, it is not supplemental."). Unlike *Ciomber* and *Amari*, Katsaris' deposition supplements Katsaris' initial disclosures. In other words, Katsaris' deposition does not make a 180-degree turn from his original disclosures, but provides additional detail consistent with the conclusions drawn in his initial disclosures.

The Court further notes that waiting until June 2008 to supplement Katsaris' initial reports is not prejudicial because the trial was continued to April 2012. [Docket No. 367.] Moreover, Judge Lawrence already found that:

7

> Defendants are not prejudiced by any presumed violation of Federal Rule of Civil
> Procedure 26(a)(2). Specifically, it appears that the supplemental materials were
> submitted shortly after the depositions had concluded and the experts had the opportunity
> to review all of the evidence in this case. Therefore, any violation was harmless.

[Docket No. 207 at 3 (citing *Sherrod v. Lingle*, 223 F.3d 605, 612–13 (7th Cir. 2000).] Katsaris is therefore permitted to testify that certain policies and procedures were disregarded by Defendants.[4] However, Katsaris is not permitted to testify about Gee's medical condition since Katsaris is not a doctor, nurse, or health professional. [Docket No. 290, Ex. 8.] *See, e.g., Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 896 (7th Cir. 2011) ("[E]xperts' lack of qualifications as automotive engineers did not necessarily preclude them from being qualified in other areas that may be relevant to the case . . . ."). Defendants' motion to preclude is therefore granted to the extent that Katsaris is precluded from testifying about Gee's medical condition.

### B. Medical Defendants' motion to preclude

Defendants Jennifer Anderson, Trina Estes, Wygonda Rogers, Gwen Sunkel, and Bloomington Hospital seek to preclude testimony of Plaintiff's expert witnesses. [Docket No. 291.] Defendants' motion simply recites six general statements of law. Defendants do not provide any analysis or attempt to make any argument other than the conclusory assertion that "Plaintiff's named experts . . . have proffered reports containing opinions in violation of one or more of the above cited rules of law." [Docket No. 291 at 3.] Such perfunctory and undeveloped arguments result in waiver, and certainly do not warrant limiting Plaintiff's experts

---

[4]Defendants also claim that Tennessen's and Jacobs' declarations contain opinions not in the initial disclosures and were not made until after the close of discovery. [Docket No. 290 at 15, 20.] Like Katsaris, the Court finds that Tennessen's and Jacobs' declarations are proper supplementation, consistent with the initial disclosures. Although Defendants claim that discovery was closed, Defendants had nearly three years to request that the Court allow further depositions. Defendants did not do so.

any more than already set forth *United States v. Hassebrock*, 663 F.3d 906, 914 (7th Cir. 2011); *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011). Defendants' motion [Docket No. 291] is therefore denied.

### C. Plaintiff's motion to strike Defendants' experts

Plaintiff also seeks to limit expert testimony. Plaintiff has filed a motion to strike expert witness testimony offered by Defendants Bloomington Hospital, Rogers, Anderson, Estes, and Sunkel. [Docket No. 313.] Defendants assert that Plaintiff's motion is untimely because Plaintiff waited four years after the initial expert disclosures to object, and the deadline for filing an objection to expert testimony has passed. [Docket No. 317 at 3.] While initial disclosures may have occurred four years ago, the disclosures were incomplete until September 30, 2011, when Defendants finally provided Plaintiff a list of cases in which its experts had previously testified. [Docket No. 314, Ex. D.] Moreover, any delay on Plaintiff's part is not prejudicial because the trial date was continued to April 2012 [Docket No. 367], and Defendants have had an opportunity to respond to Plaintiff's motion. [Docket No. 317.] The Court will therefore consider Plaintiff's motion.

Plaintiff contends that Defendants failed to disclose their experts' qualifications in violation of Rule 26(2)(B)(iv). Defendants respond that the experts' curriculum vitae were provided to Plaintiff on November 19, 2007, along with the expert reports. [Docket No. 317 at 2.] Defendants have attached those curriculum vitae to their response brief. [Docket No. 317, Exs. A–C.] Plaintiff has not filed a reply brief. Accordingly, the Court finds no support for Plaintiff's argument.

Plaintiff also contends that Defendants' experts failed to list the documents that each

9

expert relied upon and failed to disclose the cases in which Defendants' experts previously testified. [Docket No. 314 at 5.] Rule 26 does not require that an expert report list all of the documents relied upon. Rather, it only requires that the report contain "the facts or data considered by the witness . . . ." Fed. R. Civ. Pro. 26(2)(B)(ii). Defendants' experts' reports comply with this rule. With respect to cases in which Defendants' witnesses previously testified, Defendants provided that information to Plaintiff on September 30, 2011. [Docket No. 314, Ex. D.] Although Defendants waited until September 2011 to provide Plaintiff with a list of cases, this delay is not prejudicial given the trial's continuance. [Docket No. 367.]

Finally, Plaintiff argues that Jeffery Rogers is a paramedic and not a licensed nurse practitioner, and therefore not qualified to testify about the "appropriate standard of care that an LPN, nor an APN, for that matter, is required to provide to a patient in jail settings." [Docket No. 314 at 6.] Under Federal Rule of Evidence 702, a witness qualifies as an expert if they have the requisite "knowledge, skill, experience, training, or education . . . ." Rogers' experience and training as a paramedic and health services administrator in a prison setting [Docket No. 317, Ex. B] sufficiently qualifies Rogers as an expert as to his testimony regarding how the jail staff responded or should have responded to Gee. *Haley v. Gross*, 86 F.3d 630, 645 (7th Cir. 1996). However, Rogers may not testify as an expert as to Gee's general overall health or deteriorating medical condition since he is not a doctor, nurse, or otherwise trained or experienced in providing medical care over an extended duration of time. *See, e.g., Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 896 (7th Cir. 2011) ("experts' lack of qualifications as automotive engineers did not necessarily preclude them from being qualified in other areas that may be relevant to the case . . . ."). Plaintiff's motion to strike is therefore granted to the extent that it

limits Rogers' expert testimony to the adequacy of the jail's response.

**D.     Plaintiff's motion to amend**

Plaintiff seeks leave to amend his complaint [Docket No. 295] "to amend his First Amended Complaint (Doc. 57) and dismiss without prejudice the state law medical malpractice claim as against Medical Defendants." [Docket No. 295 at 3.] The basis for Plaintiff's request is Indiana Code § 34-18-8-4, which requires Plaintiff to present his medical malpractice claims to a medical review panel and obtain a decision from that panel before proceeding to court.[5]

Defendants object to Plaintiff's motion, arguing that a separate trial on the medical malpractice claims would result in an "incredible" waste of time and resources. [Docket No. 296 at 3.] The Court is mindful of this concern, which undoubtedly is genuine. However, after considering the standards set forth in Rule 15(a)(2) and Rule 41(a)(2), the Court overrules Defendants' objections. Having supervised the pretrial management of this case, it appears that the most significant portion of time and resources spent preparing for trial has been related to the federal claim. Moreover, the efforts expended in preparing to defend against the medical malpractice claim will not necessarily be lost. The claims overlap to some extent, and Defendants can use their efforts if a second trial does occur. In the end, the fact remains that Indiana Code  § 34-18-8-4 requires Plaintiff to exhaust the medical review process, and that process is not yet complete.

---

[5]"Notwithstanding section 1 of this chapter, and except as provided in sections 5 and 6 of this chapter, an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel established under IC 34-18-10 (or IC 27-12-10 before its repeal); and (2) an opinion is given by the panel." Ind. Code § 34-18-8-4.

11

In a final effort to avoid two trials, Defendants seek to waive review of Plaintiff's medical malpractice claim. [Docket No. 308.] Defendants, however, have not cited any authority that permits waiver of a statutory prerequisite to litigation, and Plaintiff objects to any attempted waiver. [Docket No. 311.] The lack of adequate briefing on this issue is of particular concern given the case law suggesting that this Court lacks subject matter jurisdiction over medical malpractice claims that have not been exhausted before a medical review panel. *See Schlatter v. Fries*, No. 1:11–CV-211, 2011 WL 6826406, at *3 (N.D. Ind. Dec. 28, 2011). Accordingly, Defendants' last-minute attempt to waive the medical review panel prerequisite will not be permitted. Plaintiff's motion to amend and dismiss without prejudice [Docket No. 295] is granted to the extent that Plaintiff's state law medical malpractice claims are dismissed without prejudice. No amended complaint needs to be filed to effectuate this result. However, Plaintiff's motion is denied to the extent that Plaintiff is attempting, even if inadvertently, to resurrect claims that already have been dismissed. [Docket Nos. 297, 304.][6]

### E. Defendants' motion to compel

Defendants Johnson and Edwards filed a motion to compel Plaintiff to disclose evidence and information concerning whether Besie Gee Leiter has a financial stake or interest in the outcome of this litigation. [Docket No. 334.] Defendants question whether Leiter was still

---

[6]It is not entirely clear from the briefs and Plaintiff's proposed amended complaint whether dismissal of the medical malpractice claims also necessitates the dismissal of any of the named Defendants. It appears as though Plaintiff did not intend to dismiss any Defendants, as Plaintiff's proposed amended complaint does not remove any of the named Defendants. However, if dismissal of these claims should result in dismissal of any Defendants, the parties should promptly alert each other and the Court to this fact. Similarly, the Court has addressed motions regarding striking expert witness testimony even though, in theory, such motions could be impacted or even mooted in whole or in part by the dismissal of Plaintiff's medical malpractice claims.

married to Gee at the time of his death, and whether she has been offered a financial stake in the outcome of this case in order to obtain her consent to disclaiming her interest as a beneficiary of the estate. Defendants reference Leiter's deposition testimony in which she purportedly stated she never divorced Gee. [Docket No. 334 at 2.] Defendants intend to call her as a witness at trial on a variety of topics and assert they are entitled to this information.

Plaintiff objects, claiming that Defendants are in effect asking the Court to re-open discovery to pursue "preposterous" allegations. [Docket No. 368 at 2.] The Court overrules Plaintiff's objections. Defendants appear to have a good faith basis to explore this issue, and the Court is acutely concerned about any alleged effort to manipulate the system. Even if the circumstances turn out not to be as disconcerting as Defendants suggest—or ultimately unfounded—Defendants are entitled to discovery into this area. Accordingly, Defendants' motion to compel is granted to the extent that Plaintiff shall, within seven days, produce any information in Plaintiff's custody or control that might show whether Leiter maintains any financial stake in the interest of this litigation, including whether she has been promised any monetary remuneration in the event of a judgment for the Plaintiff**.**

### F. Plaintiff's motion strike the deposition and testimony of Leiter

Plaintiff filed a motion to strike Leiter's deposition and testimony, claiming Leiter's testimony is irrelevant in that she was not in any way involved in Gee's life in the five years leading up to his death. [Docket No. 319.] This motion asks too much. While the Court recognizes that some or perhaps all of Leiter's testimony may be arguably irrelevant, her testimony could conceivably be relevant to various aspects of this case, including Gee's claim for damages for loss of enjoyment of life. Moreover, it is unclear precisely what testimony

Plaintiff seeks to strike. In fact, it appears what Plaintiff really wants is an order precluding Leiter from testifying at all.

But Defendants indicate that they intend to call Leiter as a witness at trial. [Docket No. 371 at 1.] The permissible scope of Leiter's testimony is more properly addressed by way of a motion in limine or by way of a motion made in the context of the trial, with the beneficial context of the trial evidence. Accordingly, Plaintiff's motion to strike Leiter's deposition and testimony is denied.

### G. Motion to withdraw

Finally, also pending before the Court is a motion for withdrawal of appearance filed by Leiter's counsel. [Docket No. 302.] Interestingly, however, Leiter is not a party to this action. She may well be an interested party, though Plaintiff contends that at best she is a "lay witness." [Docket No. 318 at 1.] Given that she is not a party, the Court will permit the withdrawal of her counsel. Accordingly, the motion to withdraw is granted and the appearances of Matthew Golitko and Judith Golitko are withdrawn. The extent to which Leiter is indeed an interested party, and the legal ramifications of any such interest, are disputed issues that the Court cannot further determine at this point.

## III. Conclusion

For the reasons and in the manner set forth above: (1) Defendants Edwards' and Johnson's motion to preclude testimony of Plaintiff's expert witnesses [Docket No. 290] is granted in part and denied in part; (2) Defendants Anderson's, Estes', Rogers', Sunkel's, and Bloomington Hospital's motion to preclude testimony of Plaintiff's expert witnesses [Docket No. 291] is denied; (3) Plaintiff's motion to strike Defendants' expert witness testimony [Docket

No. 313] is granted in part and denied in part; (4) Plaintiff's motion to amend [Docket No. 295] is granted to the extent that Plaintiff's state law medical malpractice claims are dismissed without prejudice, but denied to the extent that Plaintiff is attempting to resurrect claims that already have been dismissed; (5) Defendants' motion to compel [Docket No. 334] is granted; (6) Plaintiff's motion to strike Leiter's deposition and testimony [Docket No. 319] is denied; and (7) the motion for withdrawal of appearance filed by Leiter's counsel [Docket No. 302] is granted.

Dated: 02/20/2012

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com

Lara Kathleen Cutshall
BUNGER & ROBERTSON
lcutshall@lawbr.com

Sean W. Drew
DREW LAW OFFICE
drewlaw@qtm.net

Geoffrey Nels Fieger
FIEGER FIEGER KENNEY & JOHNSON
info@fiegerlaw.com

Judith Elaine Golitko
GOLITKO LEGAL GROUP
jg@golitkolegal.com

Matthew M. Golitko
GOLITKO LEGAL GROUP P.C.
matt@golitkodaly.com

Mary Anne Pelic
BUNGER & ROBERTSON
mpelic@lawbr.com

Ronald J. Semler
STEPHENSON MOROW & SEMLER
rsemler@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Richard A. Waples
WAPLES & HANGER
rwaples@wapleshanger.com

James L. Whitlatch
BUNGER & ROBERTSON
jwhit@lawbr.com