UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THE ESTATE OF TERRY GEE JR., | ) | |
| Deceased, by Special Administrator, | ) | |
| THOMAS BEEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. 1:06-cv-00094-TWP-TAB |
| | ) | |
| BLOOMINGTON HOSPITAL, | ) | |
| WYGONDA ROGERS, | ) | |
| CPT. JOHNSON, | ) | |
| SGT. EDWARDS, | ) | |
| JENNIFER ANDERSON, LPN, | ) | |
| TRINA ESTES, LPN, | ) | |
| GWEN SUNKEL, LPN, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON PENDING MOTIONS IN *LIMINE*

This matter comes before the Court on the parties' numerous motions in *limine*. Before

turning to the individual motions, some background is instructive.

### A. Background

The Monroe County Sheriff contracted with Bloomington Hospital to provide medical

care to its jail inmates. To care for the inmates, the hospital provided a doctor, a nurse

practitioner, and four licensed practical nurses ("LPNs"). The hospital also agreed to provide

emergency care when needed. During the events giving rise to this lawsuit, non-Defendant Dr.

Tim Alward was the jail doctor; Defendant Wygonda Rogers was the jail's nurse practitioner;

and Defendants Jennifer Anderson, Trina Estes, and Gwen Sunkel were three of the four LPNs.

On March 18, 2005, Terry Gee was booked on theft charges at the Monroe County jail.

This wasn't his first stint in jail; accordingly, the medical staff knew he was diabetic and

1

schizophrenic. Rogers ordered that Gee receive a diabetic diet, receive insulin injections, and have his blood sugar tested twice a day. The nurses contacted Gee's mother regarding other medications he may have been taking. Gee's mother subsequently brought his prescriptions to the jail, and his medicines were administered regularly. In total, Gee had contact with a nurse two to four times a day. At times, he refused insulin injections.

Roughly one week after being booked in jail, Gee received Mark Estanislau as his new cellmate. According to Estanislau, Gee did not eat much, complained of pain, and his health quickly deteriorated. Within days, he was falling out of bed, pacing in circles, and suffering from severe back pain. Estanislau says that he and the other inmates repeatedly told the medical staff and jail officers about Gee's condition.

When Rogers treated Gee, she observed that he was coughing, had a sore throat, and had a temperature of 100.3 degrees. Rogers believed that Gee had the flu and prescribed Benadryl, Robitussin, and Tylenol. The next day, Anderson noticed that Gee was unsteady on his feet and seemed dizzy. As Anderson checked his blood sugar level, Gee fell to the floor, so she helped him get into bed. By this time, Gee had a fever of 103.7 degrees, a high heart rate, and a respiration rate of 30 breaths per minute. Anderson contacted Rogers, who told her to give Gee some Tylenol to reduce his temperature. Gee's blood sugar remained high. Later that morning, Rogers visited Gee. He complained of back pain and a sore throat, and he had a temperature of 100.2 degrees. Rogers concluded that he still had the flu and ordered Tylenol, Hydrocodone, Guaifenesin, rest, and fluid intake.

The next day, Anderson visited Gee to check his blood sugar and administer his medications.  When Estes relieved Anderson of her shift, Anderson told her that Gee had the flu. Estes spoke to Gee during the evening medication pass about the importance of taking his

2

medication, getting rest, eating, and drinking fluids. She checked his breathing, which was short and rapid. She also checked his blood sugar, which was high, even for a diabetic. Estes called Rogers, and, based on Gee's symptoms, Rogers concluded that he had a bacterial infection. Rogers prescribed Keflex, an antibiotic, and asked Estes to check Gee's blood sugar that evening. If it exceeded a certain level, Estes was to administer a double dose of insulin. Later that evening, some of the inmates, including Estanislau, allegedly told Estes that Gee had not eaten for several days and had passed out that morning. Estes told Gee he needed to eat, drink fluids, and take his insulin. She then checked Gee's blood sugar level. It was still high (but had dropped since the morning). Estes administered a double dose of insulin and a double dose of Keflex.

Estes called for Captain Johnson and recommended placing Gee in medical segregation for observation. Johnson admits she overheard inmates saying Gee was sick and not eating and they did not want to catch the flu from him. However, she denies that the inmates said Gee needed to go to the hospital. Johnson approved Gee's transfer to medical segregation and signed an order stating that Gee had high blood sugar level and a respiratory condition. Gee was too weak to sign the paperwork or walk, so Johnson wheeled Gee to the segregation cell, where Estes and jail officers monitored him. They noted that he was lying down and seemed to be resting. Estes finished her shift around 11:30 p.m., not expecting Gee's condition to worsen.

The next morning, March 31, 2005, Sunkel was on duty. On the first medication pass, Sunkel gave Gee his prescriptions and tried to persuade him to eat, but he could only drink a half-full glass of milk. Gee was pale and ashy in appearance and seemed tired and weak. But Sunkel, like the other nurses, believed he had the flu. Hours later, Gee was sleeping and still had not eaten. Sunkel gave him additional medications, including Keflex, and noted he was

responsive to verbal commands. About an hour later, Rogers visited Gee and noticed he was a grayish color, which suggested he had a respiratory problem. Rogers believed Gee had developed pneumonia, and she told Sergeant Edwards that Gee needed to go to the hospital.

When an officer arrived to take Gee to the hospital a half hour later, Gee was disoriented and had to be wheeled to the van. Upon arriving at the hospital, the officer sought help in the emergency room. When he returned to the van, Gee was no longer breathing. Gee was taken into the emergency room, where doctors found that Gee had a severe case of pneumonia, his kidneys were not working properly, and he was in critical condition. On April 5, 2005, five days after he was admitted to the hospital, Gee died of "progressive respiratory failure related to adult respiratory distress syndrome and perhaps fluid overload from renal failure."

Gee's estate ("Plaintiff") brought suit under 42 U.S.C. §§ 1983 and 1988 for failure to provide adequate medical care during Gee's time in jail. The suit was brought against two sets of defendants. The first group, known as the "Medical Defendants," included Bloomington Hospital and Health Care System, Inc., and nurses Wygonda Rogers, Jennifer Anderson, Trina Estes, and Gwen Sunkel. The second group, known as the "Jail Defendants," included Monroe County jail officers Captain Judy Johnson and Sergeant James Edwards. (Medical Defendants and Jail Defendants are referred to collectively as "Defendants".) Additional facts are added below as needed.[1]

## B.  Legal Standard

After Plaintiff survived Defendants' dispositive motions, a trip to the Seventh Circuit on an interlocutory appeal, and a petition for certiorari to the United States Supreme Court, the stage has finally been set for trial. Prior to trial, however, the parties filed numerous motions in *limine*.

---

[1] This background was largely modeled after the Seventh Circuit's recitation of the facts. *See Estate of Gee ex rel. Beeman v. Johnson*, 365 Fed. Appx. 679 (7th Cir. 2010).

The court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id*. at 1400-01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded. *Id*. at 1401.

### C. Plaintiff's Motions in *Limine*

Plaintiff has filed four motions in *limine*. The first seeks to limit evidence of convictions, bad acts, and alcohol and drug use of Gee (Dkt. 347). The second seeks to limit evidence of the criminal history and civil filings of Estanislau (Dkt. 349). The third seeks to bar evidence of the criminal history of Gee's sister, Stacy Beck-Parks (Dkt. 351). The fourth seeks to bar evidence of the criminal history of the other inmate witnesses (Dkt. 355). Each motion is addressed in turn.

### 1.  <u>Gee's Convictions, Bad Acts, and Drug Use (Dkt. 347)</u>

Simply stated, Gee was not a saint. He had a rap sheet; he used alcohol and intravenous drugs; he abused prescription medications; he allegedly engaged in violent conduct towards his wife and stepfather; he used racially-charged epithets; and he had white supremacist tattoos. Plaintiff seeks to bar this evidence by highlighting principles of relevance and prejudice, and the rule that character evidence is not admissible for the purpose of proving action in conformity therewith. *See* Fed. R. Evid. 403 and 404.

Of course, none of this evidence is relevant to the question of liability – that is, were Defendants deliberately indifferent to Gee's medical condition? In contrast, at least some of this evidence is extremely relevant to damages. By Plaintiff's own words, Gee's mother is claiming

"a loss of love, affection, and companionship" as a result of her son's death. (Dkt. 385 at 2). Under nearly on-point circumstances, the Seventh Circuit has permitted evidence of a decedent's arrest record, time in prison, and drug addiction because such evidence "potentially affect[s] not only the damages recoverable by [the estate] for loss of companionship but also the damages for [the decedent's] loss of the enjoyment of life." *Cobige v. City of Chicago*, 651 F.3d 780, 784 (7th Cir. 2011). In *Cobige*, the Seventh Circuit ordered a new trial on the issue of compensatory damages, finding that the district judge erred by forbidding evidence that would have allowed the defendants to counter plaintiff's presentation on the issue of damages. *Id*. at 785 ("The district court's error in excluding evidence that could have significantly reduced the award of damages cannot be called harmless.").

Plaintiff argues that Defendants only want to introduce such evidence to "destroy Terry Gee's character." (Dkt. 385 at 2). Indeed, this evidence is troublesome. But Seventh Circuit precedent teaches that although this type of evidence may be unfavorable to a party, it does not create "'prejudice' at all . . . let alone 'unfair prejudice.'" *Id*.; *see also  Lewis v. District of Columbia,* 793 F.2d 361, 363 (D.C. Cir. 1986) (district court did not commit reversible err in admitting evidence of past drug use and arrests when the evidence was probative in aiding the jury to fairly measure the extent of damages for the alleged excessive force claim and that its prejudicial effect did not substantially outweigh its probative value).

As it stands, Gee's criminal history, drug use, and history of some of his bad acts are fair game. Specifically, Gee's penchant for racist language and his racist tattoos are not particularly relevant to the issue of damages, and could potentially engender undue prejudice. Further, without a proper foundation, allegations that Gee physically assaulted his stepfather and wife may or may not be admissible. Therefore, Plaintiff's Motion in *Limine* To Limit Evidence of

"Convictions, Prior Bad Acts and Alcohol/Drug Use" (Dkt. 347) is **DENIED** with respect to the convictions, the drug use, and other prior bad acts. The motion is **GRANTED** to the extent it applies to Plaintiff's racial slurs, white supremacist tattoos and allegation that Gee battered his stepfather and wife. If Defendants believe evidence concerning the alleged batteries becomes relevant and admissible to the issue of damages, counsel must first request a hearing outside the presence of the jury.

Finally, the Court will provide a limiting instruction explaining that the convictions, drug use, and bad acts are relevant only to damages – nothing else. In the Court's view, a limiting instruction will ameliorate the risk of undue prejudice, as the Court presumes that jurors, "conscious of the gravity of their task," will "strive to understand, make sense of, and follow the instructions given them." *United States v. Puckett*, 405 F.3d 589, 599 (7th Cir. 2005).

## 2.  Estanislau's Criminal History and Civil Filings (Dkt. 349)

Estanislau is expected to testify that, as Gee's former cellmate, he informed Defendants that Gee's condition was dire and he needed immediate medical treatment. Like Gee, Estanislau's past is less than saintly. He is currently serving time in the Wabash Valley Correctional Facility, and he has numerous convictions between 1997 and 2005. Notably, in the past, Estanislau has filed various civil lawsuits against Monroe County, Sherriff Stephen Sharp, and Captain Bill Wilson.

Plaintiff seeks to bar evidence of Estanislau's convictions by making boilerplate arguments about relevance and prejudice. Notably, Plaintiff fails to mention Rule 609, even though it governs this analysis. Specifically, Rule 609(a)(1)(A) allows a party to attack a witness's character for truthfulness by using a prior criminal conviction if that conviction was punishable by death or more than one year in prison, subject to Rule 403's probative/prejudice

balancing test. *See* Fed. R. Evid. 609(a)(1)(A) (such evidence "<u>must be admitted</u>, subject to Rule 403, in a civil case") (emphasis added). Importantly, Rule 403 is heavily tilted in favor of admissibility. *See* Fed. R. Evid. 403 (to exclude evidence, probative value must be "substantially outweighed" by the danger of unfair prejudice). Given the credibility issues at play, some Estanislau's convictions easily meet this threshold. From there, the Court must determine if any of the convictions are too old to use. Specifically, Rule 609(b) limits the use of stale convictions; it is triggered when "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b). In the last ten years, Estanislau has been convicted of four counts of robbery and one count of receiving stolen property (he is also still serving time for some of those robbery convictions). Therefore, these convictions are admissible. Defendants do not argue that the other convictions are admissible; therefore, they are not.

Plaintiff also argues that Estanislau's past lawsuits are inadmissible. While incarcerated in the Monroe County Correctional Facility, Estanislau filed two separate lawsuits concerning the quality of medical care he received. Plaintiff contends that Defendants want to use these lawsuits to "skew the jury into believing that Estanislau is only testifying to fulfill some vendetta he may have against the individuals listed above that was not accomplished in his prior litigation." (Dkt. 350 at 1). But, importantly, the potential bias of a witness is relevant. *United States v. Frankenthal*, 582 F.2d 1102, 1106 (7th Cir. 1978) ("Counsel attempting to show bias or interest must be permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.") (citation and internal quotations omitted). Common sense suggests that these lawsuits are probative of Estanislau's potential bias against the entity that incarcerates him and its medical

staff. In other words, Defendants may explore the theory that if Estanislau feels that he has been treated unfairly in the past, then he might have a motivation to testify a certain way in the present matter. This is a credibility assessment that resides within the exclusive province of the jury.

Plaintiff's Motion in *Limine* to Limit the Evidence of Criminal History and Prior Litigation of Mark Estanislau (Dkt. 349) is **DENIED** to the extent it applies to his convictions that are less than ten years old and his two lawsuits against the Monroe County Correctional Facility for inadequate medical care. The balance of the motion (which includes Estanislau's convictions that are covered by Rule 609(b)) is **GRANTED**.

### 3.   Stacy Beck-Parks's Criminal History (Dkt. 351)

Gee's sister, Stacy Beck-Parks, is expected to testify on his behalf. Plaintiff makes the same arguments about her criminal history that were made directly above. Again, Plaintiff's arguments ignore Rule 609. For the reasons described above, Beck-Parks's felony convictions within the past ten years are fair game. Accordingly, Plaintiff's Motion in *Limine* to Preclude Evidence of the Criminal History of Stacy Beck-Parks (Dkt. 351) is **DENIED**.

### 4.   Criminal History of Other Inmate Witnesses (Dkt. 355)

Repeating the same relevance and prejudice arguments, Plaintiff seeks to bar evidence concerning the criminal histories of any of the inmates who testify. Again, in light of Rule 609, Plaintiff's motion suffers the same fate as the others. Plaintiff's Motion in *Limine* to Preclude Evidence of Criminal Histories of Other Inmate Witnesses (Dkt. 355) is **DENIED**.

### D.  Jail Defendants' Motions in *Limine* (Dkt. 331)

Jail Defendants have filed fourteen motions in *limine* (Dkt. 331); each motion is addressed in turn.

### 1.  **Liability Insurance**

Citing Rule 411, Jail Defendants seek to bar evidence about liability insurance. In a conclusory fashion, Plaintiff responds by noting that Rule 411 has exceptions, but does not argue that a specific exception applies. Therefore, Jail Defendants' motion is **GRANTED**. If Plaintiff believes an exception to Rule 411 applies regarding specific evidence about liability insurance, before offering such evidence, counsel must request a hearing outside the presence of the jury.

### 2.  **Settlement Negotiations**

Citing Rule 408, Jail Defendants seek to bar evidence relating to offers of compromise and statements made during settlement negotiations. Plaintiff responds by arguing that such information may be relevant for showing bias. But, again, Plaintiff does not make this argument in meaningful detail. Therefore, Jail Defendants' motion is **GRANTED**. If Plaintiff believes such statements become relevant and admissible, before offering such evidence, counsel must request a hearing outside the presence of the jury.

### 3.  **Statutory Limits of Liability**

Jail Defendants seeks to bar evidence concerning statutory limits on recovery imposed by Indiana state law. Plaintiff does not meaningfully develop a counter-argument; more importantly, Indiana courts have previously held that these limits are irrelevant to a jury's damages calculation. *See State v. Bouras*, 423 N.E.2d 741, 744 (Ind. Ct. App. 1981) (statutory limits do "not give the jury a scale for determining damages nor is it material to evaluating injury or loss"). Therefore, Jail Defendants' motion is **GRANTED**.

### 4.  **Evidence from Plaintiff's Experts**

On February 20, 2012, Magistrate Judge Baker issued a thorough and well-reasoned

opinion (Dkt. 395) addressing the admissibility of Plaintiff's experts Werner Spitz, Gerald

Shiener, Joe Goldman, Vallerie Tennessen, Scott Jacobs, and Ken Katsaris. The present motion

appears to cover very similar terrain. Moreover, Plaintiff will not contest numerous sub-issues

presented by this motion. To the extent issues relating to Plaintiff's experts remain pending or

unclear following Magistrate Judge Baker's ruling and Plaintiff's concessions, Jail Defendants

should raise them in a renewed motion. Specifically, Jail Defendants will be required to file an

updated motion in *limine* – incorporating the rulings in Magistrate Judge Baker's order and

Plaintiff's concessions – by noon on **March 2, 2012**. Plaintiff's response is due on by noon on

**March 5, 2012**.

### 5.   Certain Statements, Phone Calls, and/or Voicemails Made to or Left with Jail Commander Bill Wilson or Sheriff Steven Sharp

Bill Wilson and Steven Sharp used to be Defendants in this action, but both were

dismissed in Judge Lawrence's summary judgment ruling. In that same ruling, Judge Lawrence

also dismissed the official capacity claims against the office of the Sheriff of Monroe County. In

the wake of this ruling, Jail Defendants argue that the Court should bar evidence concerning any

phone calls by Vera Gee to Wilson and Sharp, voicemails she left, and alleged statements made

by Lloyd Turpin to Wilson. Jail Defendants argue that because Wilson and Sharp are no longer

parties to this action, this evidence is rendered irrelevant, especially given that no evidence

suggests that the remaining Jail Defendants – Johnson and/or Edwards – were ever privy to these

communications. Plaintiff counters that such evidence is relevant because "it was obvious to a

layperson that [Terry Gee] was in need of medical attention for a serious medical condition."

(Dkt. 373 at 16). The Court believes this is a close call, but, in the end, agrees with Plaintiff.

Therefore, Jail Defendants' motion is **DENIED** to the extent it applies to the above-mentioned

communications. Of course, Jail Defendants will be free to cross-examine the witness on

whether this information may not have been relayed to Johnson and Edwards and then argue accordingly.  And, as always, parties are free to approach the bench and renew their objections during the course of trial.

### 6. <u>Disciplinary History of and Inmate Grievances Directed to Sgt. Edwards</u>

Plaintiff responds to this motion by contending that it "has no intention of admitting" this type of evidence in its case-in-chief. (Dkt. 373 at 16). Therefore, Jail Defendants' motion is **GRANTED**. If, however, Plaintiff believes Jail Defendants "open the door" to this type of evidence during the trial, then this information could become fair game, following a hearing outside the presence of the jury.

### 7. <u>Inmate Testimony Concerning Statements Made to Correctional Staff</u>

Jail Defendants seek to bar evidence of statements made by various inmates to either unknown or non-Defendant correctional staff. Jail Defendants argue that "such evidence is irrelevant to the question of whether defendants Johnson and Edwards were deliberately indifferent unless it can be established that either they were 'correctional staff' in question or that these statements were communicated to either Johnson or Edwards." (Dkt. 389 at 10). However, as Plaintiff emphasizes, such evidence is "probative to the issue that Terry Gee's serious medical condition was readily apparent" and "probative to the issue of whether defendants knew of Terry Gee's condition." (Dkt. 373 at 17). The Court finds that such evidence is sufficiently probative to warrant admission. Of course, Jail Defendants will be free to cross examine witnesses on whether or not this information was ever relayed to Johnson and Edwards and then argue accordingly.  Therefore, Jail Defendants' motion is **DENIED**.

### 8. <u>Certain Hearsay Testimony from Vera Gee</u>

Jail Defendants seek to bar Vera Gee from testifying about the following: (1) what she

overheard from other inmates while talking to her son on the jailhouse phone; (2) a statement from Dr. Sutter at Bloomington Hospital that "somebody didn't do their job"; (3) jail officer Leland Hutchens's statement that "everybody was just standing around" and "don't let them get away with this"; and (4) Vera Gee's speculation, drawn from a newspaper article, that Terry Gee did not receive adequate medical treatment due to budgetary constraints.

First, the Court finds that inmate comments overheard by Vera Gee while she was on the jailhouse phone with her son are either inadmissible hearsay or irrelevant. If the comments are coming in for the truth of the matter asserted, then they are, by definition, inadmissible hearsay. Plaintiff, however, argues that these statements are not coming in for the truth of the matter asserted. Instead, they are coming in for two other reasons: (1) to simply show that the inmates made these statements and Vera Gee heard them; and (2) to demonstrate the obviousness of Gee's dire physical condition.

To bolster his argument pertaining to the statements being said by the inmates and heard by Vera Gee, Plaintiff relies on *Martinez v. McCaughtry*, 951 F.2d 130, 133 (7th Cir. 1991) (citing the Advisory Committee Notes to Fed. R. Evid. 801 for the proposition that "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay"). But Plaintiff fails to explain how these statements are relevant if they are not coming in for their truth. Plaintiff's second argument is that these statements do not come in for their truth, but rather to merely show that Gee's dire physical condition "was readily apparent to laypersons." (Dkt. 373 at 18). But this argument is internally inconsistent. If these statements are coming in to show the dire nature of Gee's physical condition, then it necessarily follows that they are coming in for the truth of the matter asserted. Therefore, these statements are inadmissible hearsay. The inmates themselves,

however, may testify about Gee's condition and (pursuant to the Court's ruling above) what they told the correctional staff.

Second, similar problems exist with respect to the statement that Dr. Stutter allegedly made to Vera Gee (i.e. "somebody didn't do their job"). In other words, if this statement isn't coming in for the truth of the matter asserted, then it's irrelevant. Plaintiff points to two additional evidentiary rules that potentially make Vera Gee's recount of Dr. Stutter's statement admissible: Rules 801(d)(2)(D) and 803(1). Specifically, Rule 801(d)(2)(D) provides that a statement is not hearsay if "[t]he statement is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]" Here, Dr. Stutter was an employee of Bloomington Hospital, one of the Medical Defendants in this matter, and he made this statement within the scope of his employment. Therefore, this statement is admissible against Bloomington Hospital. However, Dr. Stutter is not an employee or agent of either of the Jail Defendants. In the Court's view, however, this is a distinction without a difference. Jail Defendants did not furnish the Court with authority suggesting that the declarant of a Rule 801(d)(2)(D) admission must be an employee or agent of *all* defendants. In other words, because Dr. Stutler's statement qualifies as a Rule 801(d)(2)(D) admission against Bloomington Hospital, then it is admissible, even though there are additional Defendants in this matter. Given the Court's ruling, it need not address Plaintiff's contention that this statement constitutes a "present sense impression" under Rule 803(1).

Third, Jail Defendants also seek to bar Vera Gee's testimony concerning alleged statements of correctional officer Leland Hutchens that "everybody was just standing around" and "don't let them get away with this." Plaintiff initially argues that these statements would not come in for the truth of the matter asserted because they merely show that Gee's dire physical

condition was readily apparent. However, the Court fails to see how these statements show the readily apparent nature of Gee's condition. Next, Plaintiff argues that these statements are admissible under Rule 801(d)(2)(D) because Hutchens "was acting as agent of the jail at the time that he made the statements concerning Terry to Vera Gee." (Dkt. 373 at 20-21). Importantly, though, Hutchens is an employee of the sheriff, who is no longer a party to this action, and Rule 801(d)(2) only applies to statements made by a "party's agent or employee." Therefore, this argument fails.

Plaintiff next contends that Hutchens's statement is admissible as a present sense impression under Rule 803(1) "because Sergeant Hutchens made his comments to Vera Gee contemporaneously to his observations of the situation that led to Terry finally being sent to the hospital." (Dkt. 373 at 21). Rule 803(1) has three criteria: (1) "the statement must describe an event or condition without calculated narration"; (2) "the speaker must have personally perceived the event or condition described"; and (3) "the statement must have been made while the speaker was perceiving the event or condition, or immediately thereafter." *United States v. Ruiz*, 249 F.3d 643, 646-47 (7th Cir. 2001). In the Court's view, Jail Defendants are correct with respect to the  statement "don't let them get away with it." This comment is clearly "a calculated interpretation of event, not a simultaneous perception . . . ." (Dkt. 389 at 14). In other words, this was a commentary on a situation, not a description of an event or condition made while (or immediately after) the event or condition occurred. On the other hand, the statement "they were just standing around," appears to be a statement of what the speaker personally perceived, made immediately thereafter.

Plaintiff's last argument relating to Hutchens's statements is that the statements constitute excited utterances under Rule 803(2). This exception to the hearsay rule applies when: (1) "a

startling event or condition occurred"; (2) "the statement was made while the declarant was under the stress of excitement caused by the event or condition"; and (3) "the statement relates to the startling event or condition." *United States v. Moore*, 791 F.2d 566, 570 (7th Cir. 1986). According to Plaintiff, the startling event that elicited Hutchens's statement was Terry's "precipitous physical decline and transfer to the hospital." (Dkt. 373 at 22). Here, Hutchens spoke with Vera Gee after taking Gee to the hospital (after his protracted sickness gradually grew worse), and nothing suggests that he made this statement while actually "under the stress of excitement." To the contrary, common sense suggests that Hutchens had time for conscious reflection before making this statement. Accordingly, the Court finds that Hutchens's statement is hearsay and no exception applies, except for the comment "they were just standing around".

Finally, Jail Defendants seek to bar Vera Gee from stating her view that Gee was not taken to the hospital due to budgetary constraints. It is well-settled that a lay opinion must be "rationally based on the perception of the witness." Fed. R. Evid. 701(a). In the Court's view, Vera Gee's statement is fueled by little more than speculation. Therefore, the Court will exclude this testimony.

To summarize, the Court rules as follows on the present motion in *limine*:

- Vera Gee is barred from testifying about what she overheard from other inmates while talking to her son on the jailhouse phone;

- Under Rule 801(d)(2)(D), Vera Gee is permitted to testify about Dr. Stutter's statement that "somebody didn't do their job";

- Vera Gee is permitted to testify to Hutchen's statement that "everybody was just standing around" but barred from testifying about Hutchens's statement "don't let them get away with this".

- Vera Gee is not permitted to offer testimony that in her opinion, Terry Gee did not receive medical treatment due to budgetary constraints.

16

### 9.   **Content of Vera Gee's Phone Conversations with Terry Gee**

Jail Defendants seek to exclude testimony from Vera Gee regarding phone conversations she had with Terry Gee where he relayed that he had not been eating, he needed to see a doctor, that he needed to go to the hospital, that he had a high fever, that he had blood sugar level of 588, and that he didn't think that anybody cared. Jail Defendants argue that Terry Gee's statements are garden-variety inadmissible hearsay. Without addressing Plaintiff's specific counter-arguments, the Court pauses to make two observations. First, Terry Gee's statements bear a strong indicia of reliability: at the time he made these alleged statements, Terry Gee obviously was not in a position to prognosticate that a lawsuit would arise out of his ultimate demise. Second, this motion is complicated by the fact that, in light of his death, Terry Gee will obviously not be able to testify at trial.

Under Rule 807, a hearsay statement is not excluded if: (1) "the statement has equivalent circumstantial guarantees of trustworthiness"; (2) "it is offered as evidence of a material fact"; (3) "it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts"; and (4) "admitting it will best serve the purposes of these rules and the interests of justice." Fed. R.. Evid. 807. For the reasons mentioned above, the Court finds that Terry Gee's statements had certain guarantees of trustworthiness; that they concerned a material fact; that, in light of Terry Gee's death, these statements are not fungible with other evidence; and, finally, admitting these statements will best serve the interests of justice. In other words, the Court finds that, given the circumstances, this information is relevant and admissible. Jail Defendants' motion is **DENIED** to the extent it applies to the above-mentioned communications.

### 10. <u>Evidence that Gee was Temporarily Released from Custody</u>

Plaintiff agrees that such evidence is "not relevant" but describes a motion in *limine* as "not necessary." (Dkt. 373 at 24-25). Therefore, Jail Defendants' motion in *limine* is **GRANTED**. If, however, Plaintiff believes Jail Defendants "open the door" to this type of evidence during the trial, then this information could become fair game, following a hearing outside the presence of the jury.

### 11. <u>Evidence Concerning Grief Experienced by Vera Gee or Other Beneficiaries</u>

Jail Defendants seek to bar evidence of grief experienced by Vera Gee or other beneficiaries. Plaintiff concedes that it is not allowed to recover damages for grief. Ind. Code § 34-23-1-2(c)(2)(A). However, Plaintiff is allowed to recover non-economic damages for loss of "love and companionship." Ind. Code § 34-23-1-2(c)(3)(B). From a conceptual standpoint, testimony relating to loss of "love and companionship" is not easily separable from testimony relating to "grief." So, although Plaintiff cannot testify specifically with respect to grief, Plaintiff can testify about "loss of love and companionship" As a practical matter, this parsing should take place during the course at trial. However, the Court will **GRANT** Jail Defendants' motion in *limine* as it relates only to grief-specific testimony, while acknowledging that this concept is, to some degree, inextricably linked with "loss of love of companionship."

### 12. <u>Lack of Mortality Review</u>

Plaintiff does not meaningfully dispute Jail Defendants' motion in *limine* pertaining to the lack of a mortality review. Therefore, Jail Defendants' motion is **GRANTED**.

### 13. <u>Summary Judgment Ruling</u>

Plaintiff does not meaningfully dispute Jail Defendants' motion in *limine* pertaining to the summary judgment ruling. Therefore, Jail Defendants' motion is **GRANTED**.

**14. <u>Appeal</u>**

Plaintiff does not meaningfully dispute Jail Defendants' motion in *limine* pertaining to their appeal. Therefore, Jail Defendants' motion is **GRANTED**.

**E. Medical Defendants' Motions in *Limine***

The Medical Defendants have filed eleven motions in *limine* (Dkt. 341); each motion is addressed in turn.

**1. <u>Liability Insurance</u>**

For the reasons set forth in Section D(1) of this order (the ruling on Jail Defendants' similar motion), Medical Defendants' motion is **GRANTED**. Moreover, the parties are barred from broaching the topic of insurance or insurance companies during voir dire.

**2. <u>Settlement Negotiations</u>**

For the reasons set forth in Section D(2) of this order (the ruling on Jail Defendants' similar motion), Medical Defendants' motion is **GRANTED**.

**3. <u>Opinion Testimony of Lay Witnesses</u>**

On this portion of the motion, the parties appear to overstate the extent of their disagreement. Both sides agree that lay witnesses may testify about their firsthand impressions and observations, but are not permitted to base opinions on scientific, technical, or otherwise specialized knowledge. The motion in limine is **DENIED** and the Court will address these issues at trial, should they arise, so that they can be resolved in context.

### 4.   Undisclosed Witnesses or Evidence

Plaintiff does not meaningfully contest the Medical Defendants' motion in *limine* relating to undisclosed witnesses or evidence. Therefore, Medical Defendants' motion in *limine* is **GRANTED**.

### 5.   Allegations of Code of Silence

Medical Defendants seek to bar testimony creating an inference that the hospital or medical staff conspired to cover up bad behavior, and then maintained a code of silence regarding what transpired. Notably, other district courts within the Seventh Circuit have previously ruled that the phrase "code of silence" is unduly prejudicial. *See Jackson v. Illinois*, 2011 WL 1565859, at *4 (N.D. Ind. April 25, 2011); *Townsend v. Benya*, 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003). The Court agrees that this phrase is unduly prejudicial. Therefore, Medical Defendants' motion is **GRANTED** to the extent it applies to the literal phrase "code of silence." That said, as Plaintiff notes, "[e]vidence that suggests that the Medical Defendants participated in a conspiracy to cover up inept medical care is germane to the core of Plaintiff's case." (Dkt. 381 at 3). Therefore, the balance of Medical Defendants' motion is **DENIED**.

### 6.   Hearsay

Medical Defendants seek to bar inadmissible hearsay. This generic motion does not serve a purpose, as the Court can only realistically address such issues as they arise during the course of trial. Therefore, the generic motion is **DENIED**.  The Court will reserve ruling and making a determination on what is admissible or inadmissible hearsay, as objections are made at trial.

### 7.   Prior Bad Acts

Medical Defendants next seek to bar allegations of inadequate medical care to inmates

other than Terry Gee. Plaintiff does not meaningfully develop a counter-argument. Therefore,

Medical Defendants' motion is **GRANTED**.

### 8. <u>Punitive Damages Claims against Bloomington Hospital</u>

Medical Defendants seek to bar evidence that Plaintiff is entitled to punitive damages

against Bloomington Hospital. It is well-settled that "local public entities are immune from

punitive damage awards in civil rights actions." *Kolar v. Sangamon County of State of Ill.*, 756

F.2d 564, 567 (7th Cir. 1985). However, as Plaintiff notes, Bloomington Hospital is not a public

entity. Therefore, the argument goes, it is not entitled to immunity. Plaintiff does not cite

authority to support this position.

After conducting its own research, the Court sides with Plaintiff (assuming that

Bloomington Hospital is, in fact, a private entity). As one treatise has noted, "municipal

immunity from punitive damages <u>does not extend to private organizations that contract with the</u>

<u>municipality to perform a function previously performed by the municipality</u>." 2 PUNITIVE

DAMAGES: LAW AND PRAC. 2d § 15:23 (emphasis added); *see also Segler v. Clark County*, 142

F. Supp. 2d 1264, 1269 (D. Nev. 2001) (private corporation under contract with Las Vegas

Metropolitan Police Department ("LVMPD") was subject to punitive damages; "[a]lthough

EMSA [the private corporation] is a state actor through its contract with LVMPD, the award of

punitive damages against EMSA would not punish taxpayers in the way such a decision would

affect a municipality"). Moreover, the Court failed to find authority supporting the Medical

Defendants' position. Accordingly, Medical Defendants' motion in *limine* is **DENIED**.

### 9. <u>Limits on Recovery Imposed by Indiana Medical Malpractice Act and</u> <u>Wrongful Death Statute</u>

For the reasons set forth in Section D(3) of this order (the ruling on Jail Defendants'

similar motion), Medical Defendants' motion is **GRANTED**.

### 10. <u>Opinions as to State of Mind or Feelings of Another</u>

Medical Defendants seek to bar evidence "as to what was known to another person, or as to what another person was feeling." (Dkt. 342 at 5). Given the vague nature of their motion, it is unclear to what Medical Defendants are referring. Therefore, the Court agrees with Plaintiff that any ruling on the admissibility of such evidence is premature; therefore the motion in *limine* is **DENIED**.

### 11. <u>Nurse's Testimony as to Causation</u>

Medical Defendants final motion in *limine* seeks to prevent Plaintiff's expert, Nurse Valerie Tennessen, from testifying about Terry Gee's cause of death. Plaintiff concedes that Nurse Tennessen is "not . . . qualified to testify as to cause of death . . . ." (Dkt. 381 at 14). Therefore, Medical Defendants' motion in *limine* is **GRANTED**.

### F. Conclusion

As described above, the parties' motion in *limine* are **GRANTED** in part and **DENIED** in part. If the parties wish to renew any arguments as the trial unfolds, they are free to approach the bench and do so. *See United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) (emphasizing that an order either granting or denying a motion in limine is "a preliminary decision . . . subject to change based upon the court's exposure to the evidence at trial").

Further, Jail Defendants should file an updated motion in *limine* – incorporating the rulings in Magistrate Judge Baker's order and Plaintiff's concessions addressing the admissibility of evidence from Plaintiff's experts – by noon on **March 2, 2012**. Plaintiff's response is due on by noon on **March 5, 2012**.

SO ORDERED.   2/27/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

22

Distribution to:

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com,tralstin@stephlaw.com

Lara Kathleen Cutshall
BUNGER & ROBERTSON
lcutshall@lawbr.com

Sean W. Drew
DREW LAW OFFICE
drewlaw@qtm.net

Geoffrey Nels Fieger
FIEGER FIEGER KENNEY & JOHNSON
info@fiegerlaw.com,g.fieger@fiegerlaw.com

Mary Anne Pelic
BUNGER & ROBERTSON
mpelic@lawbr.com,jhays@lawbr.com

Ronald J. Semler
STEPHENSON MOROW & SEMLER
rsemler@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Richard A. Waples
WAPLES & HANGER
rwaples@wapleshanger.com,jalbrecht@wapleshanger.com

James L. Whitlatch
BUNGER & ROBERTSON
jwhit@lawbr.com,cjdolson@lawbr.com