UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE ESTATE OF TERRY GEE JR., ) | |
| Deceased, by Special Administrator, ) | |
| THOMAS BEEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. 1:06-cv-00094-TWP-TAB |
| ) | |
| BLOOMINGTON HOSPITAL and ) | |
| HEALTH CARE SYSTEM, INC. ) | |
| WYGONDA ROGERS, ) | |
| CPT. JOHNSON, ) | |
| SGT. EDWARDS, ) | |
| JENNIFER ANDERSON, LPN, ) | |
| TRINA ESTES, LPN, ) | |
| GWEN SUNKEL, LPN, ) | |
| ) | |
| Defendants. ) | |

## ENTRY ON PENDING MOTIONS

This matter comes before the Court on three pending motions: (1) Defendants' Motion to Strike Exhibit List (Dkt. 413); (2) Defendants' renewed motions in *limine* (Dkt. 411); and (3) Defendants' Motion for Protective Order and to Quash Notice of Deposition (Dkt. 402). Each is addressed in turn.

**A. Motion to Strike (Dkt. 413)**

The Case Management Plan is unequivocally clear: two weeks before the final pretrial conference, the parties must file their exhibit lists; then, one week later, the opposing party must object. (Dkt. 256 at 4-5 and Dkt. 360). This timeline gives the Court ample time to rule on evidentiary issues prior to or at the final pretrial conference.

Plaintiff initially filed an exhibit list, to which Defendants responded with 43 pages of objections. (Dkt. 388 and 394). Subsequently, on February 29, 2012, just one week before the

1

final pretrial conference, Plaintiff, without leave of Court, filed what amounts to a unilateral "do over" – an "Amended Final Exhibit List" (Dkt. 406). In the process, Plaintiff added roughly 50 exhibits – taking the total up to 241 – and had to renumber the exhibits (starting at 1 instead of 100) in order to avoid running into Medical Defendants' numbering (which started at 301). It is worth highlighting that this case is over five years old; simply stated, the Court finds it absolutely baffling that Plaintiff would add 50 exhibits to his exhibit list just *one week* before the final pretrial conference. Needless to say, Plaintiff's tardy exhibit list caused considerable headaches and confusion for both the Court and Defendants. Logically, Defendants moved to strike the exhibit list (Dkt. 413).

Although the motion to strike is well-taken, the Court has resolved to **DENY** it. The trial is still over three weeks away, thus limiting the possibility of prejudice. Moreover, a contrary ruling runs the risk of inflicting pain on Plaintiff merely because his lawyer failed to abide by deadlines. That said, Plaintiff's counsel should not be able to ignore deadlines – and create such a hassle for the Court and its opponent – with impunity.

Therefore, Plaintiff will do the following:

(1) Refile a new exhibit list. This exhibit list will be identical to their Third Amended Final Exhibit List (Dkt. 345), beginning with No. 100 and ending at 290. With respect to the additional 50 exhibits that Plaintiff seeks to belatedly add, Plaintiff will begin by numbering those at No. 1000. This way, Defendants will not need to re-order their prior objections to the previous exhibit list and Plaintiff's exhibit numbers will not run into the Defendants' numbers. Plaintiff's new exhibit list is due Thursday, March 8, 2012, at 7:00 a.m. eastern time. If the list is not filed by that time, the Court will reverse course and **GRANT** Defendants' motion to strike; and

(2) Plaintiff will reimburse Defendants' counsel for the costs and attorney's fees associated with both (i) the motion to strike and (ii) the cost of objecting to the new exhibits.

**B. Renewed Motions in *Limine* (Dkt. 411)**

On February 20, 2012, Magistrate Judge Baker issued a thorough and well-reasoned opinion (Dkt. 395) addressing the admissibility of Plaintiff's experts. Following the order, it was somewhat unclear what issues remained pending in Jail Defendants' related motion in *limine*. Therefore, the Court asked Defendants to file a renewed motion in *limine* incorporating Judge Baker's ruling and addressing any remaining issues. The Court is mindful that Plaintiff has appealed Judge Baker's ruling (Dkt. 398). But that motion is not yet ripe; therefore, in this order, the Court will operate under the assumption that Judge Baker's ruling will remain intact. If the Court is obligated to reverse course on an issue, it will do so through its ruling on Plaintiff's Rule 72 appeal.

Jail Defendants have raised 10 issues through their new motion in *limine*. Each is addressed in turn.

**(1) Legal Conclusions**

Jail Defendants seek to bar Plaintiff's experts from offering legal conclusions. In his order, Judge Baker ruled that Plaintiff's experts are not permitted to testify that "Defendants acted with deliberate indifference," that "Defendants acted with 'wanton disregard or perhaps outright malice,'" that their actions were "reckless" or that the actions were "negligent to borderline criminal." (Dkt. 395 at 3-4). Thus, Jail Defendants' motion is **GRANTED** to the extent it encompasses legal conclusions.

**(2) Dr. Werner Spitz**

In his order, Judge Baker barred Dr. Werner Spitz from testifying. Based on this ruling, Jail Defendants make a duplicative request, asking the Court to issue a related order in *limine*. Although superfluous, the Court will **GRANT** this request.

### (3) What is Obvious to Laypersons

Jail Defendants seek to bar testimony as what would be "obvious" or "apparent" to a non-medically trained layperson. Again, this request is duplicative of Judge Baker's order. For the sake of thoroughness, however, the Court will **GRANT** the related motion.

### (4) Opinion Regarding Credibility of Other Witnesses

Jail Defendants ask the Court to bar expert testimony "purporting to render an opinion on the credibility of other witnesses." (Dkt. 412 at 8). Because such testimony would be speculative and inappropriate, the Court **GRANTS** this request.

### (5) Opinion Concerning Defendants' State of Mind

Jail Defendants ask the Court to bar Plaintiff's experts from testifying about what Defendants "knew." Such testimony is inescapably based on speculation. Therefore, Jail Defendants' motion is **GRANTED**.

### (6) Testimony Regarding Issues No Longer Before the Court

This motion seeks to bar evidence of the alleged wrongdoing of non-parties to this action. Because these persons are no longer parties, their alleged violations and misconduct are irrelevant. Jail Defendants' motion is **GRANTED**.

### (7) Negligence – What Defendants "Should Have Known"

To prevail in this lawsuit, Plaintiff must show "deliberate indifference," which is more egregious than garden-variety "negligence." Specifically, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that a prison official cannot be found liable under a deliberate indifference standard "unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at

837. In other words, there is both an objective and subjective component to this analysis. Nonetheless, Defendants argue that what they "should have known" is irrelevant, as this is not a negligence case. Thus, any reference to what a Defendant "should have known" must be barred.

The Court disagrees. Testimony as to what Defendants "should have known" under the circumstances is, at the very least, relevant to whether there were "facts from which the inference could be drawn that a substantial risk of harm exists" (i.e. the objective component of the analysis). *Id*. Accordingly, Jail Defendants' related motion is **DENIED**.

### (8) Opinions Not Contained in Reports

According to Plaintiff, he "does not intend to offer expert testimony outside the scope of the opinions that were expressed in his experts' reports provided pursuant to Fed. R. Civ. P. 26(a)(2)(B)." (Dkt. 423 at 9). Therefore, Jail Defendants' motion is **GRANTED**.

If only it were that simple. Consistent with the above order, Plaintiff's experts are barred from testifying about legal conclusions and what would be obvious to laypersons. Accordingly, Nurse Tennessen is barred from opining about Defendants' "absolute duty," that Gee's condition was so obvious that a layperson would've recognized it, and that Defendants were "deliberately indifferent." Thus, Nurse Tennessen is barred from testifying in a manner contemplated by paragraphs 9, 11, 13, and 14 of her declaration. (Dkt. 412-1).

The same goes for Dr. Jacobsen. Thus, Dr. Jacobsen is barred from testifying in a manner contemplated by paragraphs 9, 11, 14, and 15 of his declaration; moreover, he is barred from testifying about what Defendant Johnson "knew," as contemplated by paragraph 13 of his declaration. (Dkt. 412-2) But, consistent with the above order, Dr. Jacobsen may be able to testify about what Defendant Johnson "should have known."

Finally, the same reasoning applies to Katsaris. First, paragraph 8 of his declaration relates to non-parties; therefore, that paragraph is irrelevant. Second, paragraph 9 is also irrelevant, to the extent it applies to non-parties. Third, Katsaris is barred from testifying in a manner contemplated by paragraphs 12, 14, 16, and 17 – to the extent these paragraphs involve statements about "absolute duties" and "deliberate indifference." (Dkt. 412-3). Finally, in paragraph 11, Katsaris states what Edwards was able to hear and observe. What Edwards *actually* heard and observed is speculative; however, what Edwards *should have* heard and observed is fair game. Therefore, Jail Defendants' motion is **GRANTED** in part and **DENIED** in part, in a manner consistent with this subsection.

### (9) Love and Companionship

Judge Baker's ruling granted Plaintiff's motion to amend his complaint to dismiss without prejudice the state law medical malpractice claims. Jail Defendants contend that, before this development, Plaintiff was permitted to seek damages for loss of "love and companionship." *See* Ind. Code § 34-23-1-2(c)(3)(B). But after the dismissal of the state law claims, Jail Defendants argue, these damages are no longer recoverable.

Plainly stated, this area of the law is murky and confusing. Section 1988 establishes a three-step process for the selection of appropriate substantive law in a § 1983 action. *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985). The first step is to determine whether the federal civil rights law is deficient in furnishing a particular rule. *Id*. If the federal law is deficient, "the most closely analogous state law may fill the vacuum only if it is consistent with the meaning and purpose of constitutional and federal statutory law." *Id*. However, if the state law is inconsistent, "it must be disregarded in favor of the federal common law." *Id*.

Section 1983 is silent on the issue of the appropriate measure of damages. *Id.* Therefore, the Court must look to the most closely analogous state law – in this case, the Indiana Wrongful Death Statute – to determine the appropriate measure of damages. The Court may not, however, "mold the constitutional claim to fit within the parameters of state law." *Id.* Indeed, "[t]he proper approach . . . is not to transform the section 1983 action on behalf of [the decedent] into a wrongful death action on behalf of those who survived him, but to determine whether state law is inconsistent with the compensatory and deterrent policies underlying section 1983." *Id.* at 1189-90. In general, "[s]ection 1983 damages are considered to be appropriate as long as those damages generally effectuate the policies underlying § 1983." *Graham v. Sauk Prairie Police Comm'n,* 915 F.2d 1085, 1104 (7th Cir. 1990) (citations omitted). "The fundamental policies underlying § 1983 are compensation for, and deterrence of, unconstitutional acts committed under state law." *Id*. (citation omitted).

Under virtually identical circumstances, an Indiana district court has permitted an estate to recover for loss of love and companionship, as contemplated by Indiana statute. *See White v. Gerardot*, 2008 WL 2338307, at *5 (N.D. Ind. June 4, 2008) ("In short, because the Indiana Wrongful Death Statute expressly provides for the recovery of damages for a decedent's loss of love and companionship, and because [defendant] does not assert that the recovery of these expenses is in any way inconsistent with the purposes of § 1983 . . . White is legally entitled as the estate's personal representative to seek damages for the loss of [the decedent's] love and companionship."). Candidly speaking, a few cases – including *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005) – have given the Court some pause. Specifically, *Russ* held that parents had no constitutional right to recover for loss of society and companionship of their son. *Id*. at 787-88; *see also McCurdy v. Dodd,* 352 F.3d 820, 830 (3d Cir. 2003) (where officer shot and killed

7

individual after he refused demands to hold up his hands, father could not recover for deprivation of his relationship with his son because the official action was not directed at the parent-child relationship); *Claybrook v. Birchwell,* 199 F.3d 350, 357-58 (6th Cir. 2000) (adult children whose father was shot by police officers could bring action under § 1983 only as administrators of father's estate, not for any collateral injuries suffered by themselves personally). Nonetheless, *Russ* dealt with "a constitutional right to recover" certain damages. *Gerardot*, on the other hand, dealt with whether certain damages contemplated by state law may be available under § 1983. The Court finds the present circumstances to be more on-point with *Gerardot*. Therefore, Jail Defendants' related motion is **DENIED**.

**(10)    Vera Gee's Testimony about Dr. Sutter's Statement**

Last, Jail Defendants ask the Court to reconsider its ruling that Vera Gee is permitted to testify about Dr. Stutter's statement that "somebody didn't do their job." Operating under the assumption that Dr. Sutter was an employee of Bloomington Hospital, the Court previously ruled that Dr. Stutter's statement constituted a Fed. R. Evid. 801(d)(2)(D) admission. Since then, however, Jail Defendants have furnished the Court with an affidavit establishing that Dr. Sutter was *not* an employee of Bloomington Hospital; instead, he was an employee of Internal Medicine Associates. According to Defendants, Dr. Sutter was not acting as an agent or employee of a *party*, as required for a Rule 801(d)(2)(D) admission.

Plaintiff responds by arguing that although Dr. Sutter was not an actual employee or agent of Dr. Sutter, he "held himself out to be an agent of Bloomington Hospital and this creates an ostensible agency relationship." (Dkt. 423 at 16). In other words, Plaintiff asks the Court to apply the agency principle of "apparent authority" to the Federal Rules of Evidence.

8

The Court is not persuaded. Importantly, Rule 801(d)(2)(D) makes no mention of "apparent authority." Moreover, Plaintiff's reasoning would create absurd consequences. For instance, under Plaintiff's reasoning, an imposter who sneaks into a hospital, dons a white coat and stethoscope, and masquerades as a doctor of that hospital could make statements that would automatically be admitted against that hospital, notwithstanding the hearsay rules and despite the fact that the imposter's incentives may be diametrically misaligned with the hospital's. Finally, it is clear that Dr. Sutter's statement was a mere after-the-fact commentary on a situation. Therefore, his statement does not qualify as a "present sense impression" under Rule 803(1), as Plaintiff initially argued. Having reconsidered its prior order, the Court **GRANTS** Jail Defendants' related motion in *limine*. Vera Gee is not permitted to testify about Dr. Sutter's alleged statement. Of course, Plaintiff will be permitted to cross-examine Dr. Sutter about whether he made this statement.

    **C. Motion for Protective Order (Dkt. 402)**

In this case, discovery ended in July 2008. Over 40 months later, on February 23, 2012, Plaintiff's counsel sent an email to Defendants' counsel stating his intention to depose Jason Hochman in Houston, Texas on either March 21 or 28, 2012. On February 29, 2012, Defendants – citing the long-passed discovery cut-off – filed an Emergency Motion for Protective Order and To Quash Notice of Deposition (Dkt. 402). Plaintiff counters that this is not a "discovery deposition." Instead, it is a deposition *de bene esse*, which is a fancy way of saying that the deposition will be "taken from a witness who will likely be unable to attend a scheduled trial." BLACK'S LAW DICTIONARY 201 (3d pocket ed.). In other words, Plaintiff wants to take this deposition to preserve Hochman's testimony at trial.

It is true, as Defendants emphasize, that the phrase "*de bene esse*" is not found in the Federal Rules of Civil Procedure; nor do the Rules explicitly distinguish trial depositions from discovery depositions. And, notably, some courts have found this silence telling. Specifically, in *Chrysler Int'l Corp. v. Chemaly,* 280 F.3d 1358 (11th Cir. 2002), the Eleventh Circuit rejected the notion that classifying a deposition as *de bene esse* automatically removes it from the grasp of discovery deadlines. *Id.* at 1362. Emphasizing the "broad discretion district courts have in managing their cases," the Eleventh Circuit ruled that the district court did not abuse its discretion by granting a protective order against taking a deposition *de bene esse* in South Africa, based on the ground that the discovery deadline had passed. *Id.* at 1360-62. Moreover, Defendants emphasize that Plaintiff has known of Hochman's Texas residence for years. Therefore, his eleventh hour request is too little, too late – and should be denied. *See, e.g., McDermott v. Liberty Maritime Corp.*, 2011 WL 2650200, at *3 (E.D.N.Y. July 6, 2011) (denying *de bene esse* depositions because "[t]his is not a case in which the necessity to depose the VA personnel results from the need to preserve testimony that the witnesses would otherwise have given at trial, based on unforeseen events arising after the close of discovery. . . . They had sufficient notice during the discovery period that these witnesses were unavailable for trial purposes . . . . Defendants negligently failed to take the depositions at the appropriate time.").

This argument is well-taken. Plainly stated, Plaintiff should have figured this issue out long ago. However, as Plaintiff emphasizes, the Southern District of Indiana has previously recognized the practical distinction between trial depositions and discovery depositions. As then District Judge Tinder recognized, "[a]lthough the Federal Rules of Civil Procedure do not clearly differentiate between [discovery depositions and trial depositions], this distinction is generally recognized by the courts in this judicial district." *Spangler v. Sears, Roebuck & Co.*, 138 F.R.D.

122, 124 (S.D. Ind. 1991). Accordingly, "[w]hile discovery is closed under the terms of this court's scheduling order, that order does not prevent a party from memorializing a witness' testimony in order to offer it at trial." *Id*. Indeed, trial depositions have been part of most, if not all, of the trials that this Judge has presided over in the Southern District of Indiana.

Therefore, the Court's task is to determine whether this deposition is actually being taken to preserve trial testimony, or if that is merely an after-the-fact excuse to take a belated discovery deposition. "When a party opposes a trial deposition scheduled after the close of discovery . . . .[t]he court should consider a variety of factors in making this determination, including the unavailability of the witness for trial, the potential for prejudice to the opposing party, and whether the deposing party knew the information the potential witness would testify to prior to the deposition." *Bamcor LLC v. Jupiter Aluminum Corp.*, 2010 WL 4955545, at *1 (N.D. Ind. Nov. 29, 2010). Special emphasis should be placed on the potential for prejudice. *Id*. (citation omitted).

Applying these factors, the Court first recognizes that Hochman is an "unavailable witness," since he lives more than 100 miles from the place of trial and therefore beyond the reach of this Court's subpoena powers. *See* Fed. R. Civ. P. 32(a)(4)(B). Second, the risk of unfair prejudice is negligible, given that Defendants have been on notice that Hochman would be called as a witness and Plaintiff has secured a Court Reporter's office with videoconferencing so that Defendants can participate in the deposition without traveling to Texas. Moreover, it bears emphasizing that Defendants opted not to take a discovery deposition of Hochman; thus, they will be no more prejudiced by a deposition *de bene esse* than they would have been by his live testimony at trial.

In sum, the Court will permit Plaintiff to take Hochman's deposition and Defendants' Emergency Motion for Protective Order and To Quash Notice of Deposition (Dkt. 402) is **DENIED**. However, it is true, as Defendants highlight, the Plaintiff has violated the Court's scheduling order. Simply stated, Defendants are correct that this situation "was totally unnecessary," given that "Plaintiff was in contact with Hochman, in Texas, at least as early as November of 2008, and obtained an affidavit from him with a Texas notarization attached." (Dkt. 429 at 8). Unfortunately, a pattern is beginning to emerge: Plaintiff is needlessly complicating the lives of both the Court and the Defendants. Accordingly, Defendants are entitled to all costs and attorney's fees associated with preparing for and attending this belated deposition.

### D. Conclusion

For the reasons set forth above, Defendants' Motion to Strike Exhibit List (Dkt. 413) is **DENIED**, but Plaintiff is required to refile an amended exhibit list in accord with this order and pay Defendants' costs and attorney's fees associated with the motion to strike and objecting to the new amended exhibit list. Defendants' renewed motions in *limine* (Dkt. 411) are **GRANTED** in part and **DENIED** in part as set forth above. And, finally, Defendants' Motion for Protective Order and to Quash Notice of Deposition (Dkt. 402) is **DENIED**, but Defendants are entitled to all costs and attorney's fees associated with preparing for and attending this belated deposition

SO ORDERED.   3/6/2012

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution to:

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com,tralstin@stephlaw.com

Lara Kathleen Cutshall
BUNGER & ROBERTSON
lcutshall@lawbr.com

Sean W. Drew
DREW LAW OFFICE
drewlaw@qtm.net

Geoffrey Nels Fieger
FIEGER FIEGER KENNEY & JOHNSON
info@fiegerlaw.com,g.fieger@fiegerlaw.com

Mary Anne Pelic
BUNGER & ROBERTSON
mpelic@lawbr.com,jhays@lawbr.com

Ronald J. Semler
STEPHENSON MOROW & SEMLER
rsemler@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Richard A. Waples
WAPLES & HANGER
rwaples@wapleshanger.com,jalbrecht@wapleshanger.com

James L. Whitlatch
BUNGER & ROBERTSON
jwhit@lawbr.com,cjdolson@lawbr.com